IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONI J. HAGAN,

          *Plaintiff,*

        vs.                          Case No. 11-1131-JTM

CREDIT UNION OF AMERICA and MEMBER
MORTGAGE SERVICES,

          *Defendants.*

MEMORANDUM AND ORDER

Ms. Hagan seeks rescission of a mortgage loan and its subsequent refinancing. Credit Union of America and Member Mortgage Services have each filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 42 & 44). For the following reasons, the motions are granted.

**I. Standard of Review: 12(b)(6)**

Under the standards of 12(b)(6), the court accepts factual allegations in a complaint as true and draws reasonable inferences in favor of the plaintiff. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). The complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'Plausibility' in this context refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Thus, "where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). The court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## II. The Allegations and Factual Background

Ms. Hagan is a pro se litigant. She filed her fifty-six-page original Complaint on May 12, 2011, consisting of her allegations, pages of corporate information about Credit Union and Member Mortgage, a United States Department of Housing and Urban Development Settlement Statement, Truth in Lending Disclosure Statements, and assorted other documents. On August 31, 2011, without having served the original Complaint, Ms. Hagan filed a substantially rewritten Amended Complaint (Dkt. No. 8), which begins with five pages of unnumbered allegations and continues with thirty-three numbered paragraphs across the remaining twenty-two pages, interspersed with sections quoting legal documents and various laws. No documents are attached. While her pleadings are not a model of clarity, they must be construed liberally. *See Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005)."[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Ms. Hagan explicitly requests rescission of a mortgage loan agreement and subsequent refinancing for real property located at 1601 E. Winterset Circle, in Goddard, Kansas. The original mortgage loan was made in late August 2008. The refinancing occurred in mid-January 2009. Ms. Hagan bases the request for rescission on provisions of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*; the Home Owner's Equity Protection Act (HOEPA), which is an amendment to TILA at 15 U.S.C. § 1639; and "HPA", which is never explained but presumably refers to the Homeowners Protection Act, 12 U.S.C. § 4901 *et seq*. She also alleges that false statements and misleading representations were made, that she was wrongfully induced into entering the mortgage and refinancing agreements, that certain disclosures were withheld or not provided in violation of law, and that underwriting guidelines and standards were violated. In explaining these allegations, she cites the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, and the Kansas Mortgage Business Act, Kan. Stat. Ann. § 9-2201 *et seq.*, in addition to TILA and HOEPA. There are additional allegations of improper notarization, changing mortgage documents after closing, levying excessive and prohibited charges, and failure to make timely payments out of escrow.

Credit Union and Member Mortgage make numerous arguments in their motions. They argue that no right of rescission exists under TILA for residential mortgage transactions or any refinancing that incorporates less than the unpaid principal balance. Additionally, they argue that if the Amended Complaint can be construed to seek money damages, it is outside the one-year statute of limitations provided by TILA. The companies argue the transactions do not qualify under HOEPA, and that to the extent they do, they are both ineligible for rescission and are time-barred. They further argue that RESPA does not provide a private cause of action for good-faith estimates and settlement statements

and that other sections of RESPA cited by Ms. Hagan do not apply. They add that Ms. Hagan failed to plead actual damages under RESPA, that the Kansas Mortgage Business Act provides no private cause of action, and that the fraud claims are time-barred and were not pled with sufficient particularity.

### III. The Viability of the TILA, HOEPA, and RESPA Claims

*A. Ms. Hagan's Claim Is Not Viable Under TILA*

Violations of TILA can be redressed by rescission and damages. *Pennington v. EquiFirst Corp.*, No. 10-1344, 2010 WL 3981442, at *2 (D. Kan Oct. 8, 2010). Damages claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). The original mortgage loan at issue here was made in August 2008, and the refinancing took place in January 2009. Ms. Hagan's original Complaint was filed in May 2011, outside the statute of limitations. Thus, to the extent that she seeks damages in the Amended Complaint, such a remedy is time barred under TILA.

But if certain disclosures required by TILA are not made, the right to rescind a loan does not expire until three years after the transaction is consummated. *See* 15 U.S.C. § 1635(f). So rescission is not time-barred here. The right of rescission, however, does not extend to "residential mortgage transactions." *Id.* § 1635(e)(1). TILA defines a residential mortgage transaction as one "in which a mortgage deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *Id.* § 1602(x). Ms. Hagan argues the original mortgage loan does not fit the definition of a residential mortgage transaction. But the Amended Complaint states that she moved into the house on the property—which makes it her

4

dwelling. *See* Compl. ¶ 4; *see also* § 1602(w). The definitions of "dwelling" under 15 U.S.C. § 2681, which relates to lead exposure reduction, and 12 U.S.C. § 5102, which relates to mortgage licensing, are not relevant. Further, a mortgage deed of trust exists regardless of whether Ms. Hagan is making payments to the previous homeowner. Thus, the original mortgage loan is exempt from rescission claims under TILA.

The refinancing agreement is also exempt from rescission under TILA. According to 15 U.S.C. § 1635(e)(2), transactions which constitute "a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property," are exempt from rescission. So refinancing agreements may only be rescinded under this provision if "the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." 12 C.F.R. § 226.23(f)(2). The Amended Complaint alleges the refinanced loan was for $98,000, $2,666 of which were loan charges and fees, which leaves $95,334 to be refinanced. Compl. p. 23-24. It further alleges that at the time of refinancing $95,362 remained on the original loan. Compl. p. 6. Because the new amount financed did not exceed the unpaid principal balance, the refinancing agreement is exempt from rescission under TILA.

Certain allegations could conceivably cloud the mathematical analysis of the amount remaining on the original loan versus the amount loaned in the refinancing, but they do not change the legal outcome. For example, Ms. Hagan alleges that because part of an escrow fund was mishandled, the amount remaining on the original loan at the time of refinancing should have been $94,960. Compl. p. 23. She further alleges that out of the $2,666 in loan charges and fees related to

the refinancing, $256 were improper charges. Compl. p. 24. Even taking this into account, the new amount financed would not exceed the combined unpaid principal balance and the costs attributed to the refinancing. Thus the refinancing agreement would still be exempt from rescission under TILA.

### B. Ms. Hagan's Claim Is Not Viable Under HOEPA

HOEPA is part of TILA and codified at 15 U.S.C. § 1639. Damage claims under HOEPA are time-barred by the same statute of limitations as TILA damage claims. *Thielen v. GMAC Mortg. Corp.*, 671 F. Supp.2d 947, 953 (E.D. Mich. 2009). And under HOEPA, rescission of the original mortgage loan would be inappropriate for the same reasons that rescission of the mortgage loan under TILA was inappropriate—residential mortgage transactions are exempt from rescission under § 1635(e)(1). 12 C.F.R. § 226.32(a)(2)(i).

The refinancing loan also does not qualify for rescission under HOEPA because the act only covers loans in two circumstances: (1) where the interest rate exceeds the yield on Treasury securities by either eight or ten percent, depending on circumstances, or (2) where the total points and fees paid by the consumer exceed the *greater* of either eight percent of the loan amount, or $400. 12 C.F.R. § 226.32(a)(1). The Amended Complaint alleges a five percent interest rate, ruling out qualification under the interest rate provision. *See* Compl. p. 8, 20. And it alleges that the "true cost" of refinancing the loan came to $5125—well less than eight percent of the alleged loan amount—ruling out qualification under the points and fees provision. Compl. p. 20. Therefore, Ms. Hagan has failed to state a claim under HOEPA.

*C. Ms. Hagan's Claim Is Not Viable Under RESPA*

RESPA regulates the provision of real estate "settlement services," which are defined as "any service[s] provided in connection with a real estate settlement, including, but not limited to . . . the origination of a federally related mortgage loan." 12 U.S.C. § 2602. Ms. Hagan makes claims that the HUD-1 and Good Faith Estimate settlement forms authorized under § 2603 and § 2604 of RESPA were, in part, incorrectly filled out. *See, e.g.*, Compl. ¶¶ 4, 5, 6, 7, 25. But RESPA does not provide a private cause of action to enforce violations of § 2603 and § 2604. *See, e.g.*, *Morrison v. Brookstone Mortg. Co.*, 415 F. Supp. 801, 806 (S.D. Ohio 2007); *Reese v. 1st Metropolitan Mortg. Co.*, 2003 WL 22454658, at *3-4 (D. Kan. Oct. 28, 2003).

Ms. Hagan further alleges that the defendants misrepresented the need for title insurance, and cites 24 C.F.R. § 3500.16, which states in pertinent part that "[n]o seller of property that will be purchased with the assistance of a federally related mortgage loan shall violate section 9 of RESPA (12 U.S.C. § 2608)." *See* Compl. ¶ 10. In turn, § 2608 provides "[n]o seller of property . . . shall require directly or indirectly . . . that title insurance covering the property be purchased by the buyer from any particular title company." Neither defendant was the seller of the property, and the Amended Complaint does not allege Ms. Hagan was required to use any particular title company. Thus, there is no valid claim under RESPA.

Ms. Hagan makes additional allegations of RESPA violations for failure to properly manage the mortgage escrow account. *See* Compl. ¶¶ 9, 11, 13. The only RESPA provisions relevant to the administration of mortgage escrow accounts are § 2609 and § 2605. Section 2609 provides no private cause of action. *Bloom v. Martin*, 865 F. Supp. 1377, 1384-85 (N.D. Cal. 1994); *Payne v. Mortg. Elec. Registration Sys., Inc.*, 387 B.R. 614, 630 (Bankr. D. Kan. 2008). Section 2605(e)

requires loan servicers to respond to "qualified written requests" from a borrower for information

relating to the servicing of a loan. Ms. Hagan comes closest to making a claim under § 2605(e) here:

> 30. Failing to provide Plaintiff with tax documents for a portion of interest paid on
> the mortgage citing that Corporations did not have to disclose interest under $600.00
> and failure to respond to Plaintiff written request for explanation.
> 31. Excess charges on the first Annual Escrow Account Summary given in February
> 2010 beyond what regulation allow by not adding including two actual payments
> made. Failure to respond to Plaintiff's request for or offer an explanation within the
> time allowed for response. Failure to correct the excess.

Compl. ¶¶ 30, 31.

Nowhere in the Amended Complaint are damages alleged that stem from a failure to respond

—which are required to sustain a claim under the provision. *See* § 2605(f)(1). It is not clear who

failed to provide what information. Paragraph thirty-one does not even allege that a written request

was made, much less a qualified one. At best she has alleged only the possibility of misconduct, and

that is not enough to state a claim.

Section 2605(g) requires loan servicers to make timely payments out of escrow. Ms. Hagan

alleges: "Failure to make timely payments on taxes when fund had been impounded as required

resulting in two late payments." Compl. ¶ 33. Again, aside from a lack of clarity as to the factual

allegations, she does not allege damages, which are necessary to state a claim under § 2605(g) of

RESPA. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. There is insufficient content to state a claim under § 2605(g).

**IV. Any Fraud Allegations Are Time-Barred and Were Not Made with Sufficient Particularity**

Portions of the Amended Complaint could be liberally construed as a fraud claim—that Ms. Hagan was fraudulently induced into agreeing to a refinance loan. *See, e.g.*, Compl. p. 23 ("A 'new loan' was abusive and fraudulently misrepresented . . . ."). Most, if not all, of the allegations would fail to "state with particularity the circumstances constituting fraud or mistake." *See* FED. R. CIV. P. 9(b); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (holding complaint must set forth the "who, what, when, where and how of the alleged fraud."). Regardless, the statute of limitations for fraud in Kansas is two years. *See* KAN. STAT. ANN. § 60-513(a)(3). The refinance loan was made in January 2009. The original Complaint was not filed until May 2011. The alleged alteration in paperwork of the end date of the original mortgage loan from February 1, 2009 to March 1, 2009, to coincide with the start date of the refinanced loan— allegedly discovered by Ms. Hagan in June 2009—cannot constitute fraudulent inducement. *See* Compl. ¶ 20. Similarly, knowledge of the particular distribution of certain fees on the HUD settlement form, knowledge allegedly garnered in October 2009, cannot constitute fraudulent inducement. *See* Compl. ¶ 3. There are no other substantive references in the Amended Complaint to dates within the two-year statute of limitations. Accordingly, any potential fraud claim is time-barred.

**V. Other Reasons Many of Ms. Hagan's Claims Fail**

There are other reasons for dismissing most of Ms. Hagan's claims. She cites to the Kansas Mortgage Business Act, Kan. Stat. Ann. § 9-2201 *et seq.*, while making certain allegations about misleading statements, false representations, and unfair or deceptive acts. *See* Compl. ¶¶ 1, 2, 8. But

enforcement of the KMBA's requirements is entrusted to the state bank commissioner, and there is no private cause of action under the KMBA. *See* KAN. STAT. ANN. § 9-2218 to 2219. To the extent the Amended Complaint's claims rely upon the KMBA, they must be dismissed. Certain allegations pertain to acts allegedly committed by Land Title, Inc., and Gilstrap and Associates—actions such as fraudulent notarization, inducement, deceptive withholding of documents, and the making of false statements. *See, e.g.*, Compl. ¶¶ 16 - 19, 22, 26. But Ms. Hagan did not assert claims against those organizations in the Amended Complaint. And Credit Union and Member Mortgage are not liable for actions allegedly committed by third parties.

IT IS ACCORDINGLY ORDERED this 23rd day of April 2012, that Credit Union of America and of Member Mortgage Services Motions to Dismiss (Dkt. Nos. 42 & 44) are granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

10